IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

Rachel Kreuzberger, )
        Plaintiff, )
   vs. ) Civil Action No. 07-529
Michael J. Astrue )
Commissioner of Social Security, )
        Defendant. )

AMBROSE, Chief District Judge

## SYNOPSIS

Pending before the Court are Cross-Motions for Summary Judgment. (Docket Nos. 8 and 12). Both parties have filed Briefs in Support of their Motions. (Docket Nos. 9 and 13). After careful consideration of the submissions of the parties, and for the reasons discussed below, Plaintiff's Motion (Docket No. 8) is denied and Defendant's Motion (Docket No. 12) is granted.

## OPINION AND ORDER OF COURT

### I. BACKGROUND

Plaintiff has brought this action under 42 U.S.C. § 405(g) and 1383(c)(3), for review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-433, and for Supplemental Security Income ("SSI") under Title XVI of the Act, 42 U.S.C. §§ 1381-1383f.

On February 23, 2005, Plaintiff protectively filed the instant application for DIB and SSI alleging disability since September 1, 2003 due to bipolar disorder, depression, and ADHD. (R. 13, 57-59, 101). Plaintiff's date last insured for purposes of DIB was June 30, 2006. (R. 65). The state agency denied Plaintiff's application. At Plaintiff's request, Administrative Law Judge Patricia

C. Henry ("ALJ") held a hearing on June 20, 2006, at which time Plaintiff, who was represented by counsel, and a vocational expert ("VE") testified. (R. 203-28). On August 24, 2006, the ALJ denied Plaintiff's application for benefits, finding that Plaintiff was not disabled under the Act. (R. 13-21, 227). The Appeals Council subsequently denied Plaintiff's request for review of the ALJ's decision. (R. 5-7). After thus exhausting her administrative remedies, Plaintiff filed this action.

The parties have filed Cross-Motions for Summary Judgment. Plaintiff raises four main issues on appeal:

1. Whether the ALJ improperly disregarded the opinion of Plaintiff's treating physician and two consultative examiners. See Pl.'s Br. at 6-14.

2. Whether the ALJ erred in concluding that Plaintiff's activities of daily living are inconsistent with her allegations of disability. See id. at 15-17.

3. Whether the ALJ erred in determining that Plaintiff's Obsessive Compulsive Disorder was not severe. See id. at 18-22.

4. Whether the ALJ improperly relied on the vocational expert's response to an inaccurate hypothetical question in concluding that Plaintiff was not disabled. See id. at 23-24.

## II. LEGAL ANALYSIS

### A. Standard Of Review

The standard of review in social security cases is whether substantial evidence exists in the record to support the Commissioner's decision. Allen v. Bowen, 881 F.2d 37, 39 (3d Cir. 1989). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Additionally, the Commissioner's findings of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. §405(g); Dobrowolsky v. Califano, 606 F.2d 403, 406 (3d Cir. 1979). A district court cannot conduct a *de novo* review of the Commissioner's decision or re-weigh the evidence of record.

Palmer v. Apfel, 995 F. Supp. 549, 552 (E.D. Pa. 1998). To determine whether a finding is supported by substantial evidence, however, the district court must review the record as a whole. See 5 U.S.C. § 706.

To be eligible for social security benefits, the plaintiff must demonstrate that she cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A); Brewster v. Heckler, 786 F.2d 581, 583 (3d Cir. 1986).

The Commissioner has provided the ALJ with a five-step sequential analysis to use when evaluating the disabled status of each claimant. 20 C.F.R. §§ 404.1520(a), 416.920. The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if the claimant has a severe impairment, whether it meets or equals the criteria listed in 20 C.F.R. pt. 404, subpt. P, app. 1; (4) if the impairment does not satisfy one of the impairment listings, whether the claimant's impairments prevent her from performing her past relevant work; and (5) if the claimant is incapable of performing her past relevant work, whether she can perform any other work which exists in the national economy, in light of her age, education, work experience and residual functional capacity. 20 C.F.R. §§ 404.1520, 416.920. The claimant carries the initial burden of demonstrating by medical evidence that she is unable to return to her previous employment (steps 1-4). Dobrowolsky, 606 F.2d at 406. Once the claimant meets this burden, the burden of proof shifts to the Commissioner to show that the claimant can engage in alternative substantial gainful activity (step 5). Id.

A district court, after reviewing the entire record, may affirm, modify, or reverse the decision with or without remand to the Commissioner for rehearing. Podedworny v. Harris, 745 F.2d 210, 221 (3d Cir. 1984).

B.  **Whether The ALJ Improperly Disregarded The Opinion Of Plaintiff's Treating Physician And Two Consultative Examiners**

Plaintiff argues that her treating psychiatrist and two consultative examiners were unanimous in finding that she has marked limitations on her ability to work and that the ALJ improperly disregarded these opinions in favor of the opinions of two non-examining state agents who concluded that Plaintiff's limitations were more moderate. This argument is unpersuasive.

The ALJ found that Plaintiff had the residual functional capacity to perform medium exertional work limited to simple routine repetitive tasks not performed in a fast paced production environment involving only simple work-related decisions and in general relatively few workplace changes. The ALJ also limited Plaintiff to only occasional interaction with supervisors, coworkers, and the general public. (R. 16). Contrary to Plaintiff's assertions, I find that the ALJ's RFC finding is supported by substantial evidence of record, including, inter alia, records from Plaintiff's treating psychiatrists, the state agency medical consultants, and Plaintiff's self-reported activities of daily living.

1. **Treating Physicians**

Plaintiff first argues that the records of her treating mental health providers at Latrobe Area Hospital Mental Health support her argument that she was markedly limited in her ability to work because the provider's office notes dated June 21, 2005 through May 26, 2006 indicate that Plaintiff had Global Assessment of Functioning ("GAF") scores ranging from 35 to 55. (R. 193-198). Plaintiff states that according to the current issue of the Diagnostic and Statistical Manual of Mental Disorders ("DSM-IVR"), a GAF score of 50 or below indicates serious symptoms with serious to major impairment in several areas including social, occupational, or school functioning. Pl.'s Br. at 6. I agree with Defendant that Plaintiff's reliance on her GAF scores in this case is misplaced.

The GAF scale is used by clinicians to report an individual's overall level of functioning. See

Cainglit v. Barnhart, 85 F. App'x 71, 74-75 (10th Cir. 2003).[1]  As other courts have explained, however, a particular GAF score does not necessarily relate to one's ability to work.  See, e.g., id. at 75.  Here, there is no record evidence that Plaintiff's treating mental health physicians assigned Plaintiff the asserted GAF scores because they perceived Plaintiff as impaired in her ability to work or otherwise placed any restrictions on her ability to work due to her mental health.  Indeed, as the ALJ notes in her written decision, although a June 21, 2005 Latrobe Hospital record lists a current GAF score of 35 (which indicates some impairment of reality testing or communication, or a major impairment in several areas such as work or school, family relations, judgment, thinking or mood), there is no explanation in the report for the basis of that score.  (R. 18, 193).  To the contrary, as the ALJ also explained, the treatment notes indicate that on that same date, although Plaintiff's mood was depressed, her thoughts were coherent and goal directed; she had no flight of ideas or loose associations, no suicidal or homicidal ideations, no obsessions, compulsions or delusions, and no evidence of psychosis; her cognition was grossly intact; she was alert and oriented; and her insight and judgment were adequate.  (R. 18, 193).   The ALJ also points out that the GAF scores in the Latrobe Health records are inconsistent by at least 10 points, ranging from the June 21, 2005 score of 35, with a past year score of 45, to later reports showing past year scores of 50 and of 55.  (R. 19).[2]  The ALJ correctly found this inconsistency significant because, while a GAF score of 45

---

[1]  A GAF of 21-30 indicates behavior that "is considerably influenced by delusions or hallucinations OR serious impairment in communication or judgment . . . OR inability to function in almost all areas (e.g., stays in bed all day, no job, home, or friends)."  See DSM-IVR.  A GAF of 31-40 indicates "some impairment in reality testing or communication . . . OR major impairment in several areas such as work or school, family relations, judgment, thinking, or mood."  Id.  A GAF of 41-50 denotes "serious symptoms (e.g., suicidal ideation . . . ) . . . OR any serious impairment in social, occupational, or school functioning."  Id.  A GAF from 51-60 indicates "moderate symptoms . . . OR moderate difficulty in social, occupational, or school functioning."  Id.  A GAF from 61-70 reflects "some mild symptoms . . . OR some difficulty in social, occupational, or school functioning . . . , but generally functioning pretty well, has some meaningful relationships."  Id.

[2]  The ALJ also pointed out that although a May 26, 2006 clinic report assessed a GAF score of 50, that report likewise failed to provide a basis for that assessment.  In addition to the fact that a score of 50 is bordering on only moderate limitations, the substance of the May 26, 2006 report showed that Plaintiff's appearance was fair; her eye contact was good; her thought process was coherent; she denied suicidal or homicidal thoughts; and her cognition was grossly intact.  (R. 18, 198).

5

suggests serious limitations, a GAF score of 50 indicates borderline moderate symptoms, and a GAF of 55 clearly indicates moderate symptoms. (R. 19).[3] For this reason as well, the ALJ properly refused to give significant weight to the GAF scores, and, instead, reviewed the underlying reports for their substance. As set forth herein, that substance supports the ALJ's conclusion that Plaintiff was capable of performing some type of competitive work.[4]

### 2. Consultative Examiners

Plaintiff also argues that the ALJ improperly disregarded reports from two state consultative examiners as evidence that she had marked limitations in her ability to work. Specifically, Plaintiff cites the June 5, 2004 report from Dr. Lamar Neal (R. 142-149) and the May 16, 2005 report from Dr. Peter Saxman (R. 167-171).

Dr. Neal examined Plaintiff on or about June 5, 2004. He served not as a treating physician, but as a consultative examiner. After examining Plaintiff, Dr. Neal diagnosed Plaintiff with Bipolar I Disorder, Attention Deficit/Hyperactivity Disorder, by history, and cocaine abuse, currently in remission. (R. 147). He opined, among other things, that Plaintiff had marked limitations in her ability to interact appropriately with supervisors, respond appropriately to work pressures in a usual work setting, and respond appropriately to changes in a routine work setting. (R. 148). Dr. Neal further indicated that Plaintiff had moderate limitations on her ability to understand and remember detailed instructions, carry out detailed instructions, make judgments on simple work-related decisions, interact appropriately with the public, and interact appropriately

---

[3] Plaintiff also received a current GAF score of 63, reflecting only mild limitation, on June 5, 2004 from clinical psychologist Lamar Neal, one of the consultative examiners upon whom Plaintiff relies as evidence that she was disabled. (R. 17, 146).

[4] In her brief, Plaintiff focuses solely on the portions of the Latrobe Health reports showing some degree of limitation such as racing thoughts, depressed mood, labile affect, anxiety, and sadness. Pl.'s Br. at 6-7. She does not discuss the other more positive findings in the reports discussed above. The ALJ, however, noted both the positive and negative aspects of the reports and concluded that, as a whole, the reports supported a finding that, although limited, Plaintiff was capable of some gainful activity. (R. 16-19).

6

with co-workers. Id. According to Dr. Neal, Plaintiff had only slight limitations on her ability to understand, remember, and carry out short, simple instructions. Id.

Dr. Saxman examined Plaintiff on or about May 16, 2005. Dr. Saxman also was a consultative examiner and diagnosed Plaintiff with Bipolar Disorder, mixed and moderate; Attention-Deficit Disorder; Panic Disorder without Agoraphobia; and Obsessive Personality Features. (R. 169-170). Dr. Saxman opined, among other things that Plaintiff had a marked impairment in her ability to understand, remember, and carry out short, simple instructions and detailed instructions, and to make judgments and opinions. (R. 170). Dr. Saxman also opined that Plaintiff was markedly impaired in her ability to respond appropriately to the public, supervisors, coworkers, work pressures, and changes in a routine. Id.

The ALJ concluded that the opinions of Drs. Neal and Saxman overestimated Plaintiff's limitations and were inconsistent with other evidence of record. (R. 19). An ALJ can reject a treating physician's opinion, and thus obviously a consultative examiner's opinion as well, where the opinion is (1) not well-supported by medically acceptable clinical and laboratory diagnostic techniques, or (2) inconsistent with other substantial evidence of record. 20 C.F.R. §§ 404.1527(d)(2); 416.927(d)(2). Here, the ALJ's decision shows that she properly considered all of the medical evidence available in the record as a whole, and that substantial evidence supports her conclusion.

Significantly, the ALJ cites the July 27, 2004, opinion of Douglas Schiller, Ph.D., a state agency physician who reviewed the medical evidence, including Dr. Neal's June 6, 2004 report, and concluded that Dr. Neal's opinions were an overestimate of Plaintiff's difficulties and that his statements concerning Plaintiff's abilities in the areas of making occupational and performance adjustments were not consistent with the other evidence on file. (R. 150-166). Dr. Schiller further opined that, based on the evidence he reviewed, Plaintiff was able to meet the basic mental demands of competitive work on a sustained basis despite the limitations resulting from her

7

impairment. (R. 166). The ALJ also pointed to a similar opinion of Elizabeth Hoffman, Ph.D. dated June 25, 2005. (R. 19). Like Dr. Schiller, Dr. Hoffman is a state agency physician, who reviewed the medical evidence, including the May 16, 2005 opinion of Dr. Saxman. (R. 172-187). Dr. Hoffman also opined that based on the evidence of record as of that date, Plaintiff was able to meet the basic mental demands of competitive work on a sustained basis despite the limitations resulting from her impairments. (R. 187).[5] In reaching this conclusion, Dr. Hoffman gave Dr. Saxman's May 16, 2005 report little weight, describing it as only a snapshot of Plaintiff's functioning and as an overestimate of Plaintiff's limitations. Id. Both Drs. Hoffman and Schiller found that Plaintiff was only moderately (not markedly) limited in the areas of activities of daily living, social functioning, and concentration persistence, and pace. (R. 160, 186).

State agency physicians and psychologists are considered to be "highly qualified physicians and psychologists who are also experts in Social Security disability evaluation," and the ALJ must consider their findings as opinion evidence. Poulos v. Comm'r of Soc. Sec., 474 F.3d 88, 93 n.2 (3d Cir. 2007) (quoting 20 C.F.R. §§ 404.1527(f), 416.927(f)); see also Cosby v. Comm'r of Soc. Sec., 231 F. App'x 140, 147 n.7 (3d Cir. 2007); Ferris v. Astrue, Civil No. 1:CV-07-0501, 2008 WL 417688, at *12 (M.D. Pa. Feb. 14, 2008) (state agency medical consultants' opinions are entitled to weight). For all of these reasons, the ALJ did not err in crediting the opinions of Drs. Hoffman and Schiller here. Indeed, the ALJ may rely on the opinion of a state agency physician, even if that opinion is contradicted by the opinion of a treating physician, when the agency physician's opinion is consistent with the record. See Jones v. Sullivan, 954 F.2d 125, 128-29 (3d Cir. 1991).

---

[5] Dr. Hoffman concluded, inter alia, that Plaintiff "can perform simple, routine, repetitive work in a stable environment. She can make simple decisions. She is able to carry out very short and simple instructions. She would be able to maintain regular attendance and be punctual. Moreover, she would not require special supervision in order to sustain a work routine. She may have difficulty interacting with the public, coworkers, supervisors and responding to changes in the work setting." (R. 187).

As the ALJ properly noted in her opinion, the opinions of Drs. Hoffman and Schiller, as well as the ALJ's own conclusions, are supported by other evidence of record. In addition to the treating physicians' medical records described in Section II.B.1, supra (the substance of which do not necessitate a disability finding), the bodies of the reports of Drs. Neal and Saxman themselves support the ALJ's conclusion that Plaintiff retained the capacity to do some competitive work. For example, although Dr. Neal noted that Plaintiff appeared depressed with some suicidal and racing thoughts among other limitations, he also recorded that her intellectual and memory functions were relatively well intact, and she was competent to manage her own funds and to understand, retain, and follow simple or even moderately complex instructions. (R. 17-18, 145-46). Moreover, Dr. Neal assessed Plaintiff with a GAF score of 63. (R. 17, 146). As set forth above, A GAF from 61-70 reflects "some mild symptoms . . . or some difficulty in social, occupational, or school functioning . . . , but generally functioning pretty well, has some meaningful relationships." See supra n.1. Similarly, although Dr. Saxman reported a number of limitations, he also noted that Plaintiff answered questions in a goal directed, logical and relevant manner, was oriented to time and place, had good memory, and had fair reliability. (R. 18, 169). Finally, the ALJ correctly noted that Plaintiff's testimony regarding her activities of daily living also supported the conclusion that she is capable of some type of competitive work.[6]

In short, substantial evidence supports the ALJ's conclusion that Plaintiff retained the residual functional capacity to perform a limited range of medium work. This evidence includes, inter alia, the substance of Plaintiff's treating physician records form Latrobe Area Hospital; Plaintiff's own testimony; and the findings of Drs. Hoffman and Schiller that Drs. Saxman and Neal overestimated Plaintiff's limitations and that she was capable of some type of competitive work. For these and all of the above reasons, I do not find any error on this issue.

---

[6] For the reasons set forth in Section II.C., infra, Plaintiff's argument that the ALJ erred in concluding that her activities of daily living were inconsistent with a finding of disability is without merit.

C. **Whether The ALJ Erred In Concluding That Plaintiff's Activities Of Daily Living Are Inconsistent With Her Allegations Of Disability**

Plaintiff argues that the ALJ erred in concluding that her activities of daily living are inconsistent with her allegations of disability. See Pl.'s Br. at 15-17. The crux of Plaintiff's argument is that her self-described activities of daily living were "sporadic and transitory" and, therefore, show an inability rather than an ability to engage in substantial gainful activity. See id. (citing Rieder v. Apfel, 115 F. Supp. 2d 496, 504-05 (M.D. Pa. 2000)); see also Fargnoli v. Massanari, 247 F.3d 34, 40 n.5 (3d Cir. 2001) ("[S]poradic and transitory activities cannot be used to show an ability to engage in substantial gainful activity."). I disagree.

The ALJ concluded that the state agency's opinion that Plaintiff is capable of some type of competitive work was

> realistic in light of the claimant's testimony that: she lives with and is the caretaker of her three minor children, ages ten, eight, and four; she is independent in self-hygiene; she grocery shops; drives locally; and performs light household chores; she recently traveled to a funeral in Eastern Pennsylvania and occasionally has relatives from out of town visit; attends parent-teacher conferences; reads a couple of pages a day; and watches TV for one to two hours a day.

(R. 19). The ALJ stated that "[s]uch activities show significant activities of daily living, social functioning and maintaining concentration, persistence, and pace above the marked or serious functioning level." Id. Although a few of these activities, such as traveling to a funeral and occasionally having relatives visit from out of town, fairly may be described as sporadic and/or transitory, the bulk of Plaintiff's activities show that, during the relevant period, she, as the sole adult in a single-parent household, raised and took daily care of three young children as well as related housework and other parenting duties. Such activities are hardly "sporadic" or "transitory" and, thus, were properly considered by the ALJ. See 20 C.F.R. §§ 404.1529(c)(3); 416.929(c)(3); Horodenski v. Comm'r of Soc. Sec., 215 F. App'x 183, 189 n.5 (3d Cir. 2007) (disagreeing that "housework and child care – which [plaintiff] claimed to have been performing daily – constitute 'sporadic and transitory activities'"); Lozada v. Barnhart, 331 F. Supp. 2d 325, 338 n.21 (E.D. Pa.

2004) ("Caring for two young children and maintaining her home on a daily basis can hardly be described as sporadic activity."); Castillo-Borrero v. Barnhart, No. Civ. A. 02-588, 2004 WL 2203744, at *6 (E.D. Pa. Sept. 27, 2004) (maintaining home and caring for three young children on daily basis not "sporadic or transitory").

**D. Whether The ALJ Erred In Determining That Plaintiff's Obsessive Compulsive Disorder Was Not A Severe Impairment**

Plaintiff argues that the ALJ erred at step two of the sequential evaluation process in determining that her obsessive-compulsive disorder ("OCD") is a non-severe impairment. Pl.'s Br. at 18-22. This argument is without merit.

The step-two inquiry into an impairment's severity "is a *de minimis* screening device to dispose of groundless claims." Newell v. Comm'r of Soc. Sec., 347 F.3d 541, 546 (3d Cir. 2003). As set forth in 20 C.F.R. § 404.1521(a), an impairment or combination of impairments is not severe if it does not significantly limit a claimant's physical or mental ability to do basic work activities. The regulations define basic work activities as the abilities or aptitudes necessary to do most jobs, including mental activities such as understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers, and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. § 404.1521(b) see also 20 C.F.R. § 416.921(b). Thus, an impairment is not severe if the evidence establishes only a slight abnormality that has no more than a minimal effect on an individual's ability to work. Newell, 347 F.3d at 546; Mays v. Barnhart, 78 F. App'x 808, 811 (3d Cir. 2003); S.S.R. 85-28. Any doubt as to whether the step-two showing has been made must be resolved in favor of the claimant. Newell, 347 F.3d at 546-47.[7]

---

[7] Although the Court of Appeals for the Third Circuit has commented that the Commissioner's determination to deny an applicant's request for benefits at step two should be reviewed with close scrutiny, it also has made clear that it does not suggest that a reviewing court apply a more stringent standard of review in such cases. McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004). Rather, "[t]he Commissioner's denial at step two, like one made at any other step in the sequential analysis, is to be upheld if supported by substantial evidence on the record as a whole." Id. at 360-61.

In this case, I agree with Defendant that the ALJ's finding that Plaintiff's OCD is not severe is supported by substantial record evidence. In her findings of fact and conclusions of law, the ALJ states that "[b]y 2005 the medical evidence does not address claimant's obsessive and compulsive behavior" and cites to "Exhibit 7F/6" of the record. (R. 15). Exhibit 7F/6 is the record summarizing the June 21, 2005 mental status examination of Plaintiff by one of her treating physicians, Dr. Last, at the Latrobe Area Hospital Mental Health Center. (R. 193). In that record, Dr. Last states that Plaintiff has "[n]o obsessions, compulsions or delusions." Id. Dr. Last also does not mention OCD in the assessment or recommendations section of the report. Thus, Plaintiff's own treating physician evidence supports the ALJ's conclusion that her OCD is not severe. See also Exhibit 9F (R. 198-99) (subsequent medical records from Latrobe Hospital indicating that Plaintiff had no hallucinations, obsessions, or delusions).

Plaintiff argues that the 2005 Latrobe Hospital report is not dispositive because she alleges disability since September 1, 2003. This argument is not persuasive. The only prior medical records to which Plaintiff points in her brief as "evidence" of her obsessive compulsive disorder are the consultative examination reports by Drs. Neal and Saxman, dated June 2004 and May 2005, respectively. (R. 142-149, R. 167-70). Although both of these reports found that Plaintiff had, among other things, "obsessive personality features," neither report specifically concludes or suggests that these obsessive personality features significantly limit her ability to do basic work activities.[8] Plaintiff's diagnosis with "obsessive personality features" alone is insufficient to establish severity. See Salles v. Comm'r of Soc. Sec., 229 F. App'x 140, 145 (3d Cir. 2007). Moreover, the doctors' conclusions appear to be based on Plaintiff's subjective complaints to Dr. Neal of

---

[8] Even though Dr. Saxman mentions that Plaintiff has "some obsessive thoughts" in his paragraph concluding that Plaintiff "has a marked impairment to respond appropriately to the public, supervisors, coworkers, work pressures, and changes in a routine" (R. 170), he does not specifically cite those thoughts as the reason for his conclusion. Even if Dr. Saxman did base his finding of a marked impairment partially on Plaintiff's obsessive personality features, I already have concluded that the ALJ did not err in finding that Dr. Saxman's conclusions overestimated Plaintiff's limitations.

"obsessive worrying and concern about many issues revolving somewhat around her safety and the safety of her family" and to Dr. Saxman that she has "is preoccupied with obsessions about the safety of her children" and "is always checking doors and windows and the stove." (R. 142, 168-169). Again, these complaints do not suggest, let alone mandate, a conclusion that Plaintiff's obsessive thoughts imposed more than minimal limitations on her ability to perform basic work or to cope with the mental demands of working.

In addition, and in any event, the ALJ did not deny Plaintiff's application for benefits at step two of the analysis. Rather, the ALJ found in Plaintiff's favor at step two when she concluded that Plaintiff's bipolar disorder, panic disorder without agoraphobia, attention deficit disorder, and substance abuse in remission were severe impairments. The ALJ ruled against Plaintiff at steps four and/or five of the sequential evaluation process, after concluding that her residual functional capacity was sufficient to enable her to perform certain medium work existing in the economy. Moreover, the ALJ considered all of Plaintiff's impairments, including her alleged obsessive personality traits, in making her residual functional capacity determination. (R. 14, 16-17). Because the ALJ found in Plaintiff's favor at step two and proceeded with the sequential analysis, even if she had erroneously concluded that her OCD was not severe, any such error was harmless. See Salles, 229 F. App'x at 144-45 & n.2 (citing Rutherford v. Barnhart, 399 F.3d 546, 553 (3d Cir. 2005)).

In short, the ALJ's finding that Plaintiff's OCD was not severe is supported by substantial evidence and/or any error in this regard was harmless. Accordingly, Plaintiff's Motion for Summary Judgment on this issue is denied.

**E.     Whether The ALJ Failed To Accurately Set Forth All Of Plaintiff's Limitations In Her Hypothetical Question To The Vocational Expert**

Plaintiff's final argument is that because the ALJ failed to give proper weight to the findings of her treating and examining physicians, the ALJ's hypothetical question to the VE did not

accurately set forth all of Plaintiff's specific limitations. In particular, Plaintiff complains that the ALJ failed to include in the hypothetical question "the specific work related limitations of marked impairment" identified in the reports of the two consultative examiners, Dr. Neal and Dr. Saxman, in her treating psychiatrist's records, and in Plaintiff's own testimony. As set forth above, however, Plaintiff's argument that the ALJ improperly disregarded these findings is without merit.

It is well-settled that the law only requires the ALJ to include limitations supported by the record in her hypothetical question to the vocational expert. Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987); Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984). Here, the ALJ asked the VE to assume a hypothetical individual with Plaintiff's education, training, and work experience, that can do medium work, but is limited to simple, routine, repetitive tasks not performed in a fast-paced production environment, involving only simple work-related decisions, and, in general, relatively few workplace changes, and is limited to interaction with supervisors, coworkers, and the general public. (R. 224). The ALJ also asked the VE to assume a hypothetical individual with the same nonexertional limitations but who was limited to light work. (R. 225). In both cases, the VE concluded that there was work in the local and national economy that such an individual could perform. (R. 224-26). As explained fully in the preceding sections, substantial evidence supports the ALJ's conclusion that Plaintiff did not have any greater limitations.

Because the ALJ properly considered Plaintiff's limitations supported by the record, I find no error on this issue.

## III. CONCLUSION

In sum, based on the evidence of record, the arguments of counsel, and the briefs filed in support of and in opposition thereto, I conclude that the ALJ properly analyzed Plaintiff's claim and that substantial evidence supports the ALJ's finding that Plaintiff is not disabled within the meaning of the Social Security Act. Accordingly, the ALJ's decision denying Plaintiff's application for disability insurance benefits and supplemental security income will be affirmed.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

Rachel Kreuzberger,)
)
    Plaintiff,)
)
  vs.)  Civil Action No. 07-529
)
Michael J. Astrue)
Commissioner of Social Security,)
)
    Defendant.)

AMBROSE, Chief District Judge

## **ORDER OF COURT**

AND NOW, this 9th day of June, 2008, after careful consideration, it is ordered that Defendant's Motion for Summary Judgment (Docket No. 12) is GRANTED. Plaintiff's Motion for Summary Judgment (Docket No. 8) is DENIED.

                                        BY THE COURT:

                                        /s/ Donetta W. Ambrose
                                        Donetta W. Ambrose
                                        Chief U.S. District Judge